IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. SAMS

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
ROBBIE J. SAMS, APPELLANT.

Filed September 17, 2013.    No. A-13-095.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Leslie E. Cavanaugh for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

INBODY, Chief Judge, and IRWIN and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Robbie J. Sams appeals an order of the district court for Douglas County, Nebraska, denying his motion to suppress evidence obtained as a result of the execution of a search warrant. On appeal, Sams asserts that the affidavit submitted in support of the warrant was not sufficient to demonstrate probable cause. He also asserts that the district court erred in finding that even if the affidavit was insufficient, the search would be sustainable under the good faith exception. We find no merit to Sams' assertion concerning the sufficiency of the affidavit, and we affirm.

## II. BACKGROUND

After a bench trial, Sams was convicted on a charge of manufacturing, distributing, or possessing with intent to distribute a controlled substance. The charge arose out of evidence discovered through the execution of a search warrant, demonstrating that Sams was engaged in a substantial "marijuana grow operation" in a Douglas County, Nebraska, residence.

The issues raised on appeal in this case concern the sufficiency of the affidavit of Deputy Jason Mass of the Douglas County Sheriff's Department, sworn on behalf of Mass' request for issuance of a search warrant. The affidavit was submitted, and the warrant issued, in late September 2011.

According to his affidavit, Mass had then been employed by the Douglas County Sheriff's Department for approximately 10 years and had been working in the narcotics division for approximately 3½ years. Mass recounted his training and certification as a narcotics officer.

Mass attested in his affidavit that he was contacted by the Drug Enforcement Agency (DEA) concerning a tip the DEA had received about an alleged marijuana grow operation in a Douglas County residence. After receiving the tip, the DEA began conducting surveillance of the residence and identified Sams as a person involved with the residence.

In late July 2011, the DEA had served an administrative subpoena on the Omaha Public Power District, seeking records of electrical usage by the subject residence and three similar residences in the same geographic area. Mass' affidavit included details about the size of each of the four residences, as well as the details of each residence's electrical usage. The results demonstrated that the electrical usage at the subject residence during the previous 6 months was more than twice that of each of the other residences, and was actually approximately four times that of one of the residences. Mass attested in his affidavit that he was aware, through classes and training concerning the growing and cultivation of marijuana, that residences containing a marijuana grow operation experience an increased rate of electrical consumption. The DEA served another administrative subpoena on the Omaha Public Power District in late August 2011, and the results of that subpoena indicated that the subject residence had an even higher rate of electrical consumption during the period of time following the first subpoena.

Mass attested in his affidavit that he coordinated a "trash pull" of the subject residence with the residence's waste management company in late September 2011. Mass located stems and leaves that field tested positively as marijuana, venue items connecting Sams to the residence, and a copy of "Rosebud magazine," a publication concerning hydroponic growing, in the trash from the subject residence.

Mass attested in his affidavit that, based on the above information, he had reason to believe that evidence of an illegal marijuana grow operation would be found inside the residence, and he requested a search warrant for such evidence.

A magistrate issued a search warrant, finding that Mass' affidavit demonstrated probable cause that evidence of an illegal marijuana grow operation would be discovered inside the residence. Mass, along with fellow officers, executed the search warrant and discovered numerous marijuana plants in varying stages of growth, growing equipment, firearms, and venue items connecting Sams to the residence. Mass testified that the evidence discovered indicated that the marijuana grow operation in this residence was "ten times larger than the normal marijuana grows" that local law enforcement encounters.

Prior to trial, Sams filed a motion seeking to suppress all evidence seized as a result of execution of the search warrant. Sams sought suppression on the basis that Mass' affidavit was insufficient to establish probable cause because he had provided no information concerning the source of the tip received by the DEA and had not demonstrated the reliability of the source or the basis for the source's knowledge. The trial court concluded that the affidavit demonstrated

probable cause, based on the investigation of the DEA and Mass, and overruled the motion to suppress. In so ruling, the court also concluded that even if the affidavit had been lacking, the subsequent search was supported by the officers' good faith reliance on the issued search warrant.

## III. ASSIGNMENTS OF ERROR

On appeal, Sams has assigned two errors. First, he asserts that the district court erred in denying his motion to suppress on the basis of the alleged insufficiency of the affidavit in support of the search warrant. Second, he asserts that the court erred in alternatively finding that the search was supported by good faith.

## IV. ANALYSIS

### 1. SUFFICIENCY OF AFFIDAVIT

Sams first challenges the sufficiency of Mass' affidavit to demonstrate probable cause to support the issuance of a search warrant. Sams' argument on appeal is based on the assertion that the affidavit was insufficient because it did not include sufficient information about the tip received by the DEA to establish the tip's reliability or the tipster's source of knowledge. Because the affidavit included sufficient information about the subsequent investigation to demonstrate probable cause without regard to the tip or the reliability of the tipster, we find this assignment of error to be meritless.

In reviewing a trial court's ruling on a motion to suppress based on a claimed violation of the Fourth Amendment, we apply a two-part standard of review. *State v. Wiedeman*, 286 Neb. 193, ___ N.W.2d ___ (2013); *State v. Sprunger*, 283 Neb. 531, 811 N.W.2d 235 (2012). Regarding historical facts, we review the trial court's findings for clear error. But whether those facts trigger or violate Fourth Amendment protections is a question of law that we review independently of the trial court's determination. *State v. Wiedeman, supra*; *State v. Sprunger, supra*.

The Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution guarantee against unreasonable searches and seizures. *State v. Wiedeman, supra*. See *State v. Sprunger, supra*. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

See, *State v. Wiedeman, supra*. See, also, *State v. Sprunger, supra*.

In reviewing the strength of an affidavit submitted as a basis for finding probable cause to issue a search warrant, an appellate court applies a totality of the circumstances test. *Id*. The question is whether, under the totality of the circumstances illustrated by the affidavit, the issuing magistrate had a substantial basis for finding that the affidavit established probable cause. *State v. Wiedeman, supra*. Probable cause sufficient to justify issuance of a search warrant means a fair probability that contraband or evidence of a crime will be found. *State v. Sprunger, supra*.

In evaluating the sufficiency of an affidavit to obtain a search warrant, an appellate court is restricted to consideration of the information and circumstances contained within the four corners of the affidavit. *Id*. Our review is guided by the principle that sufficient information must be presented to the magistrate to allow that official to determine probable cause. *Id*.

In the present case, Sams based his argument to the trial court, and bases his argument to this court, largely on an assertion that Mass' affidavit was insufficient to establish probable cause because there was insufficient evidence adduced in the affidavit to demonstrate the source and reliability of the tip that first led the DEA and the Douglas County Sheriff's Department to begin investigating this case. We find this argument, however, to be meritless because the affidavit, under a totality of the circumstances analysis, clearly includes sufficient relevant information to establish probable cause. The affidavit does not depend on the reliability of the initial tipster, because it sets forth entirely independent and sufficient grounds for a finding of probable cause.

Sams asserts that the present case is comparable to the situation presented in *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002). We find that the present case, however, is markedly distinguishable. In *State v. Shock, supra*, a law enforcement officer swore out an affidavit in support of issuance of a search warrant and the affidavit included assertions about the defendant's prior criminal history, information about a Crimestoppers tip, and information about the results of a trash pull performed at the subject residence. On appeal, this court found that the information about the defendant's criminal history was misrepresented, which misrepresentation was made at least with reckless disregard for its truth, and that the materials found during the trash pull were not sufficiently demonstrated to be connected to criminal activity. With respect to the Crimestoppers tip, this court found that the affidavit was insufficient to establish the reliability of the tipster.

The present case is markedly distinguishable, however, because unlike the affidavit in *State v. Shock, supra*, where we essentially found that each major portion of information proffered to demonstrate probable cause was lacking, the information in this case outside of the reference to an anonymous tip that caused the DEA to begin investigating is sufficient to demonstrate probable cause. If the affidavit had never indicated that the DEA began its investigation because of a tip, and merely began by indicating that the DEA had investigated, the information gleaned from that investigation and set forth in the affidavit demonstrates probable cause.

Mass' affidavit in this case included information establishing that the DEA had conducted surveillance of the residence and identified Sams as a person involved with the residence. The DEA had also served two different administrative subpoenas on the Omaha Public Power District, the results of which demonstrated that the electrical usage at the subject residence during the first 6 months of 2011 was more than twice that of each of other comparably sized residences in the geographic vicinity, and was actually approximately four times that of one of the residences. During July 2011, the electrical usage at the subject residence was even higher. Mass attested that he was aware, through classes and training, that residences containing marijuana grow operations experience an increased rate of electrical consumption. Unlike the factual information in the affidavit in *State v. Shock, supra*, this information was not erroneous or misleading, and there were assertions directly tying the information to a belief that evidence of an illegal marijuana grow operation would be found inside the residence.

In addition, the information in Mass' affidavit concerning the results of the trash pull revealed that Mass located stems and leaves that field tested positive as marijuana. Unlike the potentially innocuous items located in the trash pull in *State v. Shock*, 11 Neb. App. 451, 653 N.W.2d 16 (2002), the fact that actual marijuana was located in the trash of the subject residence in the present case supported a belief that evidence of an illegal marijuana grow operation would be found inside the residence.

Although it is true that there is no information in the affidavit to reveal the source of the tip that led the DEA to begin its investigation in this case, and it is true that there is no information to establish the basis of knowledge or reliability of the tipster in this case, the assertions in the affidavit in support of the search warrant clearly sufficed to demonstrate probable cause. The lack of information about the tip in *State v. Shock, supra*, was meaningful because there the other information in the affidavit was insufficient to demonstrate probable cause. Sams' assigned error concerning the sufficiency of the affidavit to support the search warrant is without merit.

## 2. GOOD FAITH

In light of our conclusion above, finding that the affidavit submitted in support of issuance of the search warrant was sufficient to demonstrate probable cause, we need not further address the officers' good faith reliance on the warrant.

## V. CONCLUSION

We find that the affidavit submitted in support of the request for a search warrant demonstrated probable cause to believe that evidence of an illegal marijuana grow operation would be found inside the residence. Sams' assertions on appeal are without merit, and we affirm.

AFFIRMED.